**In the Matter of WALCOTT STEELE, Claimant**

## Misc. No. 1-1973

**In the Matter of GILLIARD MATHURIN, Claimant**

## Misc. No. 2-1973

**In the Matter of GILBERT SAMPSON, Claimant**

## Misc. No. 3-1973

District Court of the Virgin Islands

Div. of St. Croix

February 8, 1973

EDWARD J. OCEAN, ESQ., Christiansted, V.I., *for claimants*

ATTORNEY GENERAL, St. Thomas, V.I., *for government*

YOUNG, *Judge*

### MEMORANDUM OPINION AND ORDER

The three applications before this court have the same factual and legal issues for consideration and were consolidated for argument and disposition. Applicants are applying for permission to file their claims against the territorial government under the local Tort Claims Act (Title 33 V.I.C. Ch. 118—§§ 3408–3413). Since applicants failed to file their claims within 90 days after the accrual of their claims as required by 33 V.I.C. 3409(c), they must now seek permission to file their claims "out of time", which permission may be granted or denied by this Court within a period of two years after the accrual of the claims (33 V.I.C. 3409(c)). The discretion of this Court in acting upon the applications is not unfettered. There is an implication in section 3409(c) that if the applicants present a reasonable excuse for their failure to have filed within the 90-day time prescribed and if it is shown that the government, "or its appropriate department or agency" had, prior to the expiration of the 90-day period, actual knowledge of the facts constituting the claim, then leave to file out of time should be granted—provided, however, that no leave shall be granted if the Court shall find that the government has been "substantially prejudiced" by the applicant's failure to file timely.

The facts common to all three applications are as follows: The three applicants were arrested on February 21, 1971 and detained at Richmond Penitentiary. Early the next day, February 22, 1971, they were taken to police headquarters for questioning. It was during this "rigorous interrogation" that the alleged brutality and assaults oc-

curred. Shortly thereafter, on the same day, when the claimants were taken before Municipal Court Judge Antoine Joseph to be formally charged and advised of their rights, they were ordered, by reason of their physical appearance, to be taken to the hospital for medical examination and attention.

Informations charging two counts (kidnapping and murder of Luz Maria Felix) were filed against Steele and Sampson on February 24, 1971, and against Mathurin on April 20, 1971. An expedited trial was granted and commenced on April 20, 1971. On the first day of the trial, Chief Judge Almeric Christian of this Court ordered the Commissioner of the Department of Public Safety to investigate the alleged acts of brutality attending the interrogations of February 22, 1971. This investigation was completed on July 8, 1971.

On April 24, 1971 all three claimants were convicted of kidnapping and murder in the second degree and on May 18, 1971, were sentenced to concurrent terms of 20 and 35 years for the respective counts. On November 30, 1971, the convictions and sentences were set aside and a new trial ordered. A year later (on November 27, 1972), after a new trial with the venue changed to St. Thomas, the jury acquitted all three applicants.

I

The Government, in opposing the applications, has argued that applicants have not shown excusable neglect in their failure to file either their actual claims or at least notices of intent to file claims within the 90-day period permitted by law nor have they sustained their burden to show (1) that the government had, during that 90-day period, actual knowledge of the facts upon which the claims are based and (2) that the government will not be substantially prejudiced by this proposed late filing of the

claims. There have been lengthy written and oral arguments on both sides as to the effect of the incarceration of the applicants during and after the accrual of their claims. One side argues that the claimants were under a legal disability at the time of the accrual of the claims according to 5 V.I.C. 36(a)(3)[1] because they were then "imprisoned on a criminal charge." The other side argues that they were not actually imprisoned on a criminal charge until after the informations were filed—or, at least, until after they appeared before the lower court—both events having occurred *after* the accrual of the claims. However, for reasons which will appear below, I see no importance to such a distinction.

Claimants were imprisoned from February 21, 1971 to November 27, 1972—a total of approximately 21 months after the accrual of their claims. With the removal of their legal disability (as defined in 5 V.I.C. § 36) on November 27, 1972, did they then have 90 days thereafter within which to file their claims as matter of right? I think not. It is my opinion that 5 V.I.C. § 36 has no application to this case. According to 33 V.I.C. 3409, claimants must file their claims or written notices of intention to file claims within 90 days after the accrual of the claims. There is no tolling of that period by reason of any "legal disability". We must bear in mind that filing a claim or, as permitted by 33 V.I.C. 3409, the filing of a notice of intent to file a claim is not exercising the kind of civil right which would be barred by any legal disability as defined in 5

---

[1] 5 V.I.C. § 36 provides in part as follows:

"(a) If any person entitled to bring an action mentioned in this chapter is, at the time the cause of action accrues —

* * *

(3) imprisoned on a criminal charge, or in execution under sentence of a court for a term less than his natural life—the time of such disability shall not be a part of the time limited for the commencement of the action, but the period within which the action shall be brought shall not be extended in any case longer than two years after such disability ceases.

(b) No person shall avail himself of a disability unless it existed when his right of action accrued."

V.I.C. § 36. However, if claims are not filed within that 90-day period, then the Court has the discretionary power to permit the late filing of the claims within 2 years after accrual of the claims. It is only with respect to this two-year period for "filing by leave of court" that the issue of legal disability is involved. It is this last sentence of 33 V.I.C. 3409 that is hereby construed. By its very wording, it applies only to the Court's discretion. It states: "But if the claimant shall be under legal disability, the claim may *be presented* within two years after such disability is removed." (Italics for emphasis.) It does not state that the claim may be filed. Moreover, this last sentence is part and parcel of the unlettered paragraph in Section 3409 (which probably should be designated "subsection (d)") concerning application to the court for permission to file out of time. It does not enlarge the short 90-day period within which the filing of claims may be made as matter of right.

In light of this construction of 33 V.I.C. 3409, the question of legal disability has no real significance to these applications for the reasons that the legal disability has not overrun the two-year period and that the applications for leave to file their claims have been made within the two-year period—with no need for enlargement of that period pursuant to 33 V.I.C. 3409(c). Be that as it may, I now address myself to those reasons why I believe that I must grant these applicants permission to file their claims against the government.

The three statutory requirements governing the Court's discretion to grant leave to applicants are (1) a reasonable excuse for failure to file timely; (2) that the government had within the original 90 days after accrual of the claim actual notice of the facts constituting the claim; and (3) that there be an absence of any substantial prejudice to the government that would be caused by the

late filing. I find that the applicants have satisfied all three of these requirements.

Firstly, applicants were much more concerned with a criminal prosecution than they were with a possible tort claim arising out of the interrogations which produced the criminal informations. They were indigent and they were assigned counsel to defend them against the criminal charges. Although assigned counsel might well have suggested that they look into redress for alleged brutality and assault by the government's agents, they were under no duty to do so. Furthermore, they were in jail for pretrial detention and did not have freedom of movement to explore any civil remedies that were open to them. They were undoubtedly much more preoccupied with efforts to get out of jail rather than to recover compensation for alleged wrongs. The fact that they did not file their claims against the Virgin Islands Government, or even their notices of intention to file claims against the Virgin Islands Government, is understandable under all the circumstances.

Secondly, I find without question that the Government of the Virgin Islands had actual knowledge of the facts constituting the claim under the local Tort Claims Act. The government in its argument opposing the applications herein has urged that the Governor or the Lieutenant Governor had no knowledge of the facts. However, it is clear under our statute that the knowledge of the government may be that of "any appropriate department or agency." In view of the fact that the Department of Public Safety was ordered to investigate the alleged acts of brutality, this would appear to me to be the appropriate department and its knowledge of the actual facts constituting the claims is therefore the knowledge of the Government of the Virgin Islands insofar as such knowledge is required by the Tort Claims Act.

Thirdly and lastly, the government has not shown that it has been or will be substantially prejudiced were this Court to grant leave to the applicants to file their applications within the two years after the accrual of the claims. There has been no showing that any of those agents of the Virgin Islands Government mentioned in the claims of the applicants are no longer available as witnesses for the government, nor is there any showing that any other person who would be a favorable witness to the government is now unavailable and that the government has been prejudiced by the delay of filing the claims herein. A more important factor in this connection is that the government was ordered to make an investigation of the alleged acts of brutality. This investigation was concluded on July 8, 1971 at a time when all of the facts were fresh in everyone's minds and all of the witnesses available. Having made the investigation at such an early time, the government cannot be very prejudiced by having the claims filed within the two-year period after the accrual of the said claims.

### ORDER

For reasons expressed in the foregoing Memorandum Opinion, leave of Court is hereby granted to the claimants in these three applications to file their claims against the Government of the Virgin Islands under the territorial Tort Claims Act.